UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHERMAN BRONSINK and DAGMAR FRIESS, husband and wife,<br><br>Plaintiff(s),<br><br>v.<br><br>ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, an Iowa Corporation; AMCO INSURANCE COMPANY, an Iowa Corporation; DEPOSITORS INSURANCE COMPANY, an Iowa Corporation; and NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation,<br><br>Defendant(s). | NO. C09-00751-MJP<br><br>ORDER ON MOTION TO COMPEL PLAINTIFFS TO PRODUCE COMMUNICATIONS WITH ADJUSTERS INTERNATIONAL |

The above-entitled Court, having received and reviewed

1. Motion to Compel Plaintiffs to Produce Communications with Adjusters International (Dkt. No. 19.)

2. Plaintiffs' Response to Defendants' Motion to Compel Plaintiffs to Produce Communications with Adjusters International (Dkt. No. 25.)

3. Reply in Support of Motion to Compel Plaintiffs to Produce Communications with Adjusters International (Dkt. No. 26.)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that Defendants' motion is GRANTED.

**Background**

On June 9, 2008, Sherman Bronsink's commercial property burned. (Rogers Decl. ¶ 3.) He filed an insurance claim under his homeowner's policy, held by Defendant insurer, Depositors. Two

**ORDER ON MOTION TO COMPEL PLAINTIFFS TO PRODUCE COMMUNICATIONS WITH ADJUSTERS INTERNATIONAL- 1**

days after the fire Bronsink engaged Adjusters International, a public adjusting firm, to handle his claim. (Rogers Decl. ¶ 4.) As part of the agreement, Bronsink signed a "notice of representation" appointing Mr. Massod Khan of Adjusters International as his designated representative. Id. On July 9, 2008, Adjusters notified the Defendants of this representation and directed all communication regarding this claim to come through them. Id. Simultaneous to the case with Depositors, Bronsink was also involved in a case regarding the same fire against another insurer, Travelers. In mid-August, 2008, Mills Myers Swartling ("MMS"), who represents Bronsink in the instant case, "became involved" with Bronsink on the Travelers dispute. (Salazar Decl. ¶ 2.) MMS represented him at an Examination Under Oath on September 16, 2008. While litigating the Travelers claim, MMS, Adjusters and Bronsink entered a confidentiality agreement regarding that dispute on November 17, 2008. MMS did not formally begin representing Bronsink on the Depositors claim until mid-February, 2009. During discovery, Defendants requested all communications between MMS and Adjusters as well as all contracts and agreements with Adjusters and all communications between Adjusters and Bronsink (RFP 3 & 4). Plaintiffs objected to these requests and Defendants filed a motion to compel disclosure.

**Discussion**

In a diversity case, the court must apply state law to substantive issues and federal law to procedural issues. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). The attorney-client privilege is a substantive issue and must be interpreted using the law of the state. Lexington Ins. Co. v. Swanson, 240 F.R.D. 662, 666 (W.D.Wash.2007).

A cornerstone of discovery is that any relevant material that is not privileged may be obtained by party's request for production. Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 777 (1991). Attorney-client is one such privilege that may protect certain documents and communications from discovery. Attorney-client privilege exists to protect confidential communications between attorney

and client and to foster the production of sensitive information from clients to that attorney. Coburn v. Seda, 101 Wn.2d 270, 274 (1984).

In order to benefit from the attorney-client privilege, communications between an attorney and client must be confidential in nature. Ramsey v. Mading, 36 Wn.2d 303, 312 (1950). Generally, when a third party intrudes on these communications, whether intentionally or unintentionally, those communications lose the privilege. Id. An exception exists when that third party is an agent of the attorney or the client and they are essential to the giving of legal advice. State v. Aquino-Cervantes, 88 Wn. App. 699, 707 (1997); State v. Gibson, 3 Wn. App 596, 599 (1970); United States v. Kovel, 296 F.2d 918, 920 (2nd Cir. 1961); The burden of establishing this privilege rests with the party claiming it. Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 332 (2005).

The record supports Plaintiffs' contention that Adjusters International serves as an agent to the client. Bronsink hired Adjusters two days after the fire. The signed agreement designated Adjusters as Bronsink's representative and instructed all insurers to communicate solely through Adjusters. (Defs.' Ex. A at 1.) Washington courts have held that, " 'if the third person is present as a needed and customary participant in such consultation, the circle of confidence may be reasonably extended to include him and the privilege will be maintained.' " Gibson, 3 Wn. App at 599 (citing C. McCormick, Law of Evidence § 104 (1954)). As the designated representative, receiving all communications from insurers and having knowledge of the claim, it is reasonable to hold that Adjusters International serves as the client's agent in this case.

To claim attorney-client privilege, a third party must meet the additional test of being necessary to the provision of legal advice. Aquino-Cervantes, 88 Wn. App. at 707. "The attorney-client privilege extends to third parties indispensable to an attorney's provision of legal services to the client, such as legal secretaries and accountants." Id. The Second Circuit held that "what is vital

**ORDER ON MOTION TO COMPEL PLAINTIFFS TO PRODUCE COMMUNICATIONS WITH ADJUSTERS INTERNATIONAL- 3**

1 to the privilege is that the communication be made in confidence for the purpose of obtaining legal
2 advice from the lawyer." Kovel, 296 F.2d at 920.

3 Plaintiffs state that the purpose of Adjusters' presence with the withheld documents and
4 communications "was to better understand the underlying claims so that MMS could properly advise
5 and represent Plaintiffs." (Reply at 5.) Thirteen of the 104 withheld documents are dated before
6 February 5th and Plaintiffs provide some detail on these in their brief, but fail to transpose those
7 details to the privilege log. Of the documents dated after February 5th, Plaintiffs broadly declare
8 them to be protected by the privilege (Id at 7.), but provide little evidence to support that claim for
9 any of the named documents.

10 The privilege log does little to clarify the nature of the documents and does not provide names
11 of authors. The baseline for withholding documents or communications through privilege comes
12 from Fed.R.Civ.P. 26(b)(5)(A). It requires those claiming privilege to "describe the documents,
13 communications, or tangible things not produced or disclosed-and do so in a manner that, without
14 revealing information itself privileged or protected, will enable other parties to assess the claim."
15 Fed.R.Civ.P. 26(b)(5)(A)(ii). A privilege log can be deemed insufficient for purposes of attorney-
16 client privilege if the description and comments do not provide enough to support the claim. U.S. v.
17 Construction Products Research, Inc., 73 F.3d 464, 473 (2nd Cir. 1996). In Construction Products,
18 the court noted that a privilege log labeling each entry as "attorney-client communication" and
19 descriptions such as "Letter re: client orders" did not provide information sufficient for determining
20 privilege existed, particularly in the absence of supporting affidavits. Id. "If the party invoking the
21 privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for
22 application of the privilege, his claim will be rejected." Bowne of New York City, Inc. v. Ambase
23 Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993); See also In Re Grand Jury Investigation, 974 F.2d
24 1068, 1071 (9th Cir. 1992).

25

26 **ORDER ON MOTION TO COMPEL PLAINTIFFS TO PRODUCE COMMUNICATIONS WITH ADJUSTERS INTERNATIONAL- 4**

| | |
|---|---|
| 1 | Plaintiffs' privilege log does not supply sufficient detail to support a determination of |
| 2 | privilege. The log describes some of the documents with terms such as "attorney input," "attorney |
| 3 | plans" and "concerning litigation." (Defs.' Ex. D.) But others use words like "review of adjuster |
| 4 | files" and "attorney conference". Id. All are described under "Reason for Privilege" as "Attorney- |
| 5 | Client Communication." And all of the descriptions only have generic identifiers, such as "Mills |
| 6 | Myers Swartling" and "Adjusters International." These labels give no meaning to *who* the authors |
| 7 | and recipients were. No further description, certainly no specific explanations sufficient to fill |
| 8 | factual gaps, is provided. Without further evidence it is difficult for the Court or Defendants to assess |
| 9 | if these communications could be deemed necessary to the giving of legal advice. Plaintiffs fail to |
| 10 | meet their evidentiary burden. |
| 11 | Because Plaintiffs' withheld communications do not meet the evidentiary baseline for |
| 12 | privilege, the arguments by Defendants regarding waiver of that privilege are not considered. |
| 13 | Defendants' request for sanctions is denied. Defendants failed to plead this issue as part of |
| 14 | the original motion and cannot attach it in the reply briefing, giving Plaintiffs no opportunity to |
| 15 | respond. |

### Conclusion:

In light of the evidence, Defendants' motion to compel should be GRANTED. Plaintiffs fail to provide sufficient evidence demonstrating the necessity for Adjuster International's inclusion in the communications and thus fail to meet their evidentiary burden on these communications. Plaintiffs must produce all requested communications within five days of this order.

The clerk is ordered to provide copies of this order to all counsel.

Dated: February 16, 2010

Marsha J. Pechman
U.S. District Judge

ORDER ON MOTION TO COMPEL PLAINTIFFS TO PRODUCE COMMUNICATIONS WITH ADJUSTERS INTERNATIONAL- 5