UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHERMAN BRONSINK and DAGMAR FRIESS,

           Plaintiff(s),

  v.

ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, et al.,

           Defendant(s).

NO. C09-751MJP

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed

1.     Defendant's Motion for Partial Summary Judgment Dismissing IFCA Claim (Dkt. No. 78), Plaintiff's Response (Dkt. No. 93) and Defendant's Reply (Dkt. No. 97);

2.     Defendant's Motion for Summary Judgment (Dkt. No. 89), Plaintiffs' Response (Dkt. No. 109), Defendant's Reply (Dkt. No. 113), Plaintiffs' Surreply (Dkt. No. 120) and Plaintiffs' Supplemental Authorities (Dkt. No. 128);

3.     Plaintiffs' Motion for Partial Summary Judgment on Bad Faith and IFCA Claims (Dkt. No. 95), Defendant's Response (Dkt. No. 104), Plaintiffs' Reply (Dkt. No. 115) and Defendant's Surreply (Dkt. No. 117).

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that the motions are DENIED.

**ORDER ON MOTIONS
FOR SUMM JUDGMT - 1**

**Discussion**

This case, brought by the insureds against the company which issued their homeowner's insurance policy, involves claims of breach of contract, bad faith and violations of the Insurance Fair Conduct Act ("IFCA;" RCW 48.30.015) and the Consumer Protection Act ("CPA;" RCW 19.86.020 et seq.). The claims arise out of the investigation of a commercial property fire in which Plaintiffs allege they lost a considerable amount of personal property. During the course of the investigation, it became clear that Defendant Depositors Insurance Company ("Depositors") suspected that Plaintiffs had exaggerated or falsified large portions of their claim. Although the insurer issued a Reservation of Rights letter, before the company arrived at a decision concerning coverage Plaintiffs filed this lawsuit.

The parties have filed a series of summary judgment motions. The Court issued oral rulings on some of them following oral argument, and now issues its written ruling on all the motions.

<u>Defendant's Motion for Partial Summary Judgment Dismissing IFCA Claim</u>

When Plaintiffs filed their original complaint on May 1, 2009, it contained three causes of action (breach of contract, bad faith and violation of the Consumer Protection Act) and an "anticipated" fourth cause of action for violation of the IFCA. Dkt. No. 2, p. 11. Three days later, Plaintiffs' counsel sent a letter to the Washington State Insurance Commissioner and to Daniel Thenell, an attorney hired by Defendants to conduct Examinations Under Oath ("EUOs") of Plaintiffs, advising them of Plaintiffs' intent to file a claim for violation of the IFCA. On June 3, shortly after Defendant retained its present counsel, Plaintiffs sent him a letter reiterating their intent to lodge an IFCA claim. On July 1, Plaintiffs filed an amended complaint which removed the word "Anticipated" from their fourth cause of action alleging a violation of the IFCA. Dkt. No. 10, ¶¶ 4.4.1-4.2, p. 8.

**ORDER ON MOTIONS
FOR SUMM JUDGMT - 2**

1  The IFCA provides treble damages and attorney fees and costs for any insured who "is
2 unreasonably denied a claim for coverage or payment of benefits by an insurer." RCW 48.30.015(1).
3 There is a condition precedent for maintaining an action under this statute:

4 (a) Twenty days prior to filing an action based on this section, a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the
5 insurance commissioner.

6 RCW 48.30.015(8)(a).

7  Defendant's motion is premised on two related arguments: (1) because there is no such thing
8 as an "anticipated" cause of action, Plaintiffs must be deemed to have filed their IFCA claim on May
9 1 without the required 20 days written notice; and (2) even if the "amended" claim is their first filing
10 of the IFCA cause of action, it is the filing of the complaint which triggers the condition precedent
11 therefore Plaintiffs are still barred from pursuing their rights under the IFCA.

12  The Court is not persuaded by either argument. Depositors cites no authority for its
13 "anticipated cause of action = actual cause of action" argument. The Court agrees that "anticipated"
14 causes of action have no procedural substance, which simply means that they will be treated as never
15 having been filed. Defendant's contention that the filing of any complaint concerning the insurance
16 policy ("an action") triggers the IFCA notice requirement is undercut by the language of the statute,
17 which reads that the written notice is to be provided 20 days prior to the filing of "an action *based on*
18 *this section*" (emphasis supplied). The Court interprets the phrase to plainly mean "a claim for a
19 violation of the IFCA." Plaintiffs' written notice to the Insurance Commissioner, to attorney Thenell
20 and then to attorney Rogers, over 20 days in advance of amending their complaint, was sufficient to
21 satisfy the condition precedent to filing their IFCA claim and Defendant's motion to dismiss that
22 claim will be denied.

**ORDER ON MOTIONS
FOR SUMM JUDGMT - 3**

Plaintiffs' Motion for Partial Summary Judgment on Bad Faith and IFCA Claims

There are two ways by which an insurer can violate the IFCA. One is by "unreasonably" denying coverage – since Plaintiffs filed their suit before a coverage determination had been reached, they clearly cannot avail themselves of the statute on that basis. The IFCA also enumerates several sections of the Washington Administrative Code ("WAC"), the violation of any one of which will trigger a violation of the statute. Plaintiffs seek a determination as a matter of law that Defendant violated each of the enumerated WACs. The Court addresses each of them in turn:

*WAC 284-330(1): Misrepresentation of pertinent facts*

This regulation prohibits the misrepresentation of pertinent facts or insurance policy provisions. Plaintiffs' claim here is that Depositors "misrepresented" two material/pertinent facts: (1) that Plaintiffs' public adjuster (Mr. Khan) had initially estimated the loss at $84,000 (when there is some indication in the record that he indicated to Defendant's employees that the loss was "well in excess of $84,000") and (2) that the "entire contents of the building had been excavated and disposed prior to inspection" (when in fact that was not the case).

Plaintiffs' argument in this regard is plagued by their casual use of the term "misrepresentation" in the context of WAC insurance violations. Nowhere do they define or provide case or statutory authority on the elements of "misrepresentation," particularly in terms of scienter (e.g.,malice, recklessness, gross negligence or negligence). It appears that they wish the Court to equate "inaccurate representation" with "misrepresentation." They present no evidence that Depositor's employees deliberately altered or distorted Khan's original statement.

Defendant, on the other hand, provides case authority which clearly points to a requirement of proof of "unreasonable, frivolous or unfounded" behavior as a prerequisite for finding a WAC violation. See Keller v. Allstate Ins. Co., 81 Wn.App. 624, 633-34 (1996); St. Paul Fire and Marine Ins. Co. v. Onvia, 165 Wn.2d 122, 130 (2008). "Reasonableness" is a classic "question of fact"

**ORDER ON MOTIONS FOR SUMM JUDGMT - 4**

determination, as would be the proof of any allegation that Defendant had acted negligently, recklessly or with deliberate intent to defraud.

Nor is there clear-cut proof of the "harm" which results from these statements. Plaintiffs want the Court to consider that the suspicious light in which these allegations cast them and the resultant intense and probing investigation into their claims is an "injury" which might have been avoided had the facts been portrayed as they allege them, but this is speculative at best.  It is the business of insurance companies to be vigilant about insurance claims and to investigate them thoroughly in every instance.  There is no finding possible at this stage that "but for" these statements by the insurance company's representatives, the detailed and lengthy investigation into the nature of Plaintiffs' claims would not have occurred.

Additionally, from a summary judgment standard of review, these are far from "undisputed" issues of material fact.  Defendant presents a sworn declaration from one of its investigators that Khan told him that his initial estimate <u>was</u> $80,000 and that he may have told this to the first Depositors claims adjuster (Alexander) assigned to the case.  Dkt. No. 90, Gormley Decl., ¶ 4. Whether the truth is that Kahn never said "excess of $84,000" or that he was actually misquoted, the fact remains that there is evidence on both sides of the issue and that alone is sufficient to deny Plaintiffs' motion concerning this WAC regulation.

*WAC 284-30-330(3), 284-30-370, 284-30-380(3): Prompt investigation and regular notice*

The Court analyzes each of these regulatory provisions in turn:

- 284-30-330(3): "Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies."

Plaintiffs have presented no proof that Depositors did not "adopt and implement reasonable standards for the prompt investigation of claims arising under the policy."  There is no evidence of Defendant's policies concerning investigation at all.  The Court finds that Plaintiffs have failed to satisfy their burden of proof concerning this allegation.

**ORDER ON MOTIONS FOR SUMM JUDGMT - 5**

1
2
3
- 284-30-370: "Every insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time. All persons involved in the investigation of a claim must provide reasonable assistance to the insurer in order to facilitate compliance with this provision."

Defendant had 30 days from the notification of the claim to complete its investigation "*unless the investigation [could not] reasonably be completed within that time*." "Reasonableness" is a question of fact dependent on the circumstances and the circumstances involved in the investigation at issue are teeming with disputed factual issues about who was responsible for the delays in investigating the claim and whether the delay was "reasonable." The Court cannot find as a matter of law that any delay was not reasonable, and Plaintiffs' request for summary judgment to that effect will be denied.

- 284-30-380(3): "If the insurer needs more time to determine whether a first party claim should be accepted or denied, it must notify the first party claimant within fifteen working days after receipt of the proofs of loss giving the reasons more time is needed. If after that time the investigation remains incomplete, the insurer must notify the first party claimant in writing stating the reason or reasons additional time is needed for investigation. This notification must be sent within forty-five days after the date of the initial notification and, if needed, additional notice must be provided every thirty days after that date explaining why the claim remains unresolved."

Defendant's responsibility to notify the insureds that it needed more time to investigate is not even triggered until "fifteen working days after receipt of the proofs of loss." The regulation does not specify whether the proofs of loss have to be sworn or not, but it is undisputed that Depositors (1) did not receive the inventory binder until January 5, 2009 and (2) did not receive sworn proof of loss until June 5, 2009. Again, Plaintiffs provide no authority on what the legal threshold is which triggers this duty.

At a minimum, the duty was not triggered until January 5, 2009 when Defendant received an inventory binder listing items known to be lost in the fire, supplemented by "Additions per Insured" (Plaintiffs' "memory lists," which comprised $333,000 of the $440,000 claimed loss). Following that date, Plaintiffs received the following communications/notifications:

**ORDER ON MOTIONS FOR SUMM JUDGMT - 6**

1           •   **1/15/09**: a letter from Depositors investigator Gormley to Plaintiffs' public adjuster
2               Khan requesting a meeting at which Gormley hoped to be provided documents
3               establishing purchase and ownership of the claimed property (Dkt. No. 90, Gormley
4               Decl., Exh. A);
5           •   **3/2/09**: a letter from Thenell to Plaintiffs' counsel requesting claim information and
6               financial information (including tax returns and W-2 forms, which Thenell says were
7               never provided) (Thenell Decl., Exh. C);
8           •   **3/10/09**: a letter from Thenell to Plaintiffs' counsel renewing the 3/2/09 document
9               request (Id., Exh. D); and
10          •   **4/10/09**: a letter from Thenell to Plaintiffs counsel renewing the document request,
11              requesting "proof of loss compliant with the insureds' duties under the policy," and
12              requesting to inspect Plaintiffs' computers (Id., Exh. F).

13       The Court finds that these letters satisfy the WAC notice requirement both as to the
14  likelihood of delay and the reason(s) for the delay (i.e., the clear implication is that, until these
15  requests are met, the investigation cannot be concluded). On May 1, the complaint was filed and at
16  that point Depositors' duty to investigate in accordance with WAC regulations became subordinate to
17  their litigation responsibilities. ("When Plaintiffs filed this action, they effectively halted any claims
18  settlement process and subjected themselves to the rules governing litigation." Stegall v. Hartford
19  Underwriters Ins. Co., 2009 WL 54237 (W.D. Wash. 2009); Southridge Partnership v. Aspen
20  Specialty Ins. Co., 2009 WL 1175627 (W.D. Wash. 2009)).

21       Plaintiffs are not entitled to a finding of violations of any of these WACs as a matter of law,
22  and summary judgment in their favor will be denied.

**ORDER ON MOTIONS
FOR SUMM JUDGMT - 7**

*Obligation of good faith violated by "requiring Plaintiffs to waive attorney-client privilege"*

Plaintiffs balked at a request by Depositors' attorney Thenell to produce their computers for inspection, and among Plaintiffs' conditions for production was a requirement that they be permitted to withhold any documents which they considered privileged (and produce a "privilege log" of those withheld documents).  Thenell rejected that request, assuring Plaintiffs that no privileged documents would be accessed while Defendant's consultant reviewed Plaintiffs' computer files.  While the Court does not consider this assurance to be adequate to protect Plaintiffs' confidential communications from scrutiny, neither would it be justified to call it a "bad faith requirement that Plaintiffs waive their attorney-client privilege" as Plaintiffs have characterized it.  Defendant counsel acknowledged that privileged documents should not be viewed by insurance personnel reviewing the record, and nothing in the communications cited by Plaintiffs states that they will be required to choose between "surrender" of their attorney-client privilege and denial of their claim.

The Court also notes that there were obviously other factors at play in the delay in obtaining these computers for inspection.  Even after Defendant conceded Plaintiffs' right to withhold any document they believed confidential and provide a privilege log of the withheld material, it still took a motion to compel and an order from this Court to secure production of the computers.  Any suggestion that Defendant's insistence on making their own privilege determination was solely responsible for this particular delay in the investigation of the claim (an allegation which is at the heart of Plaintiffs' "bad faith" theory) seems disingenuous.

The Court will deny the request to find a violation of the "good faith" obligation as a matter of law based on these facts.

*Good faith/IFCA claims*

Having determined that Plaintiffs' requests for individual summary judgment findings of violations of the WAC and the "good faith obligation" are without merit, the Court will not grant

**ORDER ON MOTIONS
FOR SUMM JUDGMT - 8**

Plaintiffs' more sweeping request for summary judgment findings of liability on these two claims in general. Plaintiffs' Second and Fourth Causes of Action for violation of the obligation of good faith and conduct in contravention of IFCA are composed of nothing more than the allegations disposed of above, therefore the Court's findings concerning them dispose of the larger question as well.

Two additional factors mitigate against a finding in Plaintiffs' favor. First of all, even Plaintiffs concede that "a determination of bad faith is question of fact." Plaintiffs Mtn., p. 11; and see Onvia ("[w]hether an insurer acted in bad faith is a question of fact;" 165 Wn.2d at 130) and Anderson v. State Farm, 101 Wn.App. 323, 335-36 (2000), *review denied* 142 Wn.2d 1017 (2001) (question of fact whether insurer had reasonable justification to deny claim). Only "where reasonable minds could not differ" may you find bad faith as a matter of law. See Bryant v.Country Life Ins. Co., 414 F.Supp.2d 981, 1000 (W.D. Wash. 2006). It is not possible to look at the facts of this case and declare that the only reasonable conclusion to draw is that Defendant acted in bad faith.

Finally, the Court notes that Defendant has interposed a "misrepresentation" defense concerning Plaintiffs' conduct throughout the course of the investigation. A finding of misrepresentation by Plaintiffs would void the insurance contract and would likely conclude this litigation. Plaintiffs did not move for a summary judgment ruling that Defendant is not entitled to present this defense. Without a finding on the legal sufficiency of this defense, Plaintiffs are not entitled to prevail on their claims as a matter of law.

The Court denies Plaintiffs' motion for summary judgment findings in their favor on their good faith and IFCA claims.

Defendant's Motion for Summary Judgment

Defendant makes three arguments for dismissal of Plaintiffs' contractual and extra-contractual claims, based on Plaintiffs' conduct during the course of the investigation and its

**ORDER ON MOTIONS
FOR SUMM JUDGMT - 9**

argument that Plaintiffs' conduct violates the terms of their insurance policy.  The relevant portions of the policy state:

*Duties After Loss*

> In case of a loss to covered property, these duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
>
> 1. Give prompt notice to us or our agent;
> \*\*\*\*
> 5. Cooperate with us in the investigation of a claim;
> 6. Prepare an inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of loss.  Attach all bills, receipts and related documents that justify the figures in the inventory.
> 7. As often as we reasonable (sic) require:
>    a. Show the damaged property;
>    b. Provide us with records and documents we request and permit us to make copies; and
>    c. Submit to examination under oath, while not in the presence of any other "insured," and sign the same;
> 8. Send to us, within 60 days after our request, your signed, sworn proof of loss. . .

The policy provides that "[n]o action can be brought unless there has been full compliance with all of the terms under Section I of this policy..."  Rogers Decl., Exh. A, "Homeowners 3 Special Form," pp. 16-17.

> Finally, the policy contained a fraud/misrepresentation provision:
>
> We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:
>
> 1. Intentionally concealed or misrepresented any material fact or circumstance;
> 2. Engaged in fraudulent conduct; or
> 3. Made false statements;
>
> relating to this insurance.

Id., at pp. 18-19.

Defendant argues for summary judgment dismissing Plaintiffs' claims on the following grounds:

**ORDER ON MOTIONS FOR SUMM JUDGMT - 10**

1.   <u>Failure to provide sworn proof of loss prior to filing suit</u>

The language of the insurance policy states: "No action can be brought unless there has been full compliance with all of the terms under Section I of this policy..."  Rogers Decl., Exh. A, "Homeowners 3 Special Form, pp. 16-17.  "Full compliance" includes the filing of a sworn proof of loss statement.  The Washington Supreme Court "ha[s] consistently, and in keeping with the prevailing rule, held that, where proof of loss is required by a policy of insurance, such proof must be furnished by the insured as a condition precedent to an action upon the policy..." <u>Buchanan v. Switzerland General Ins. Co.</u>, 76 Wn. 2d 100, 106 (1969); <u>see also</u> <u>Seattle Merchants' Assoc'n v. Germania Fire Ins. Co.</u>, 64 Wash. 115 (1911) (unsworn inventories do not satisfy the sworn proof of loss requirement).

However, Washington law is also clear that conditions precedent will not act as a bar to recovery by insureds absent a showing of actual prejudice.  <u>See</u> <u>Public Utility District No. 1 of Klickitat County v. International Ins. Co.</u>, 124 Wn.2d 789, 804 (1994)(". . . an insurer cannot deprive an insured of the benefit of purchased coverage absent a showing that the insurer was actually prejudiced by the insured's noncompliance with conditions precedent such as those at issue in this case."); and <u>Oregon Automobile Insurance Co. v. Salzberg</u>, 85 Wn.2d 372, 377 (1975).  Even the case cited by Defendant in its own behalf (<u>Tran v. State Farm Fire and Casualty Co.</u>, 136 Wn.2d 214 (1998)) states that, following a finding of breach of the policy's cooperation clause, "State Farm needed to establish only that [Plaintiff's] failure to produce these items prejudiced its ability to determine coverage..." <u>Id.</u> at 229.[1]

Defendant has produced no evidence that Plaintiffs' filing of their lawsuit prior to the submission of their sworn proof of loss statement has resulted in actual prejudice to the insurer.

---

[1] The <u>Tran</u> court also noted that "prejudice is an issue of fact and will seldom by established as a matter of law." 136 Wn.2d at 228.

**ORDER ON MOTIONS FOR SUMM JUDGMT - 11**

Defendant requested the sworn proof of loss statement on April 9, 2009; Plaintiffs' 60-day time limit for submission of the statement would have expired on June 8, 2009 (one day before the expiration of the statute of limitations on their contract action arising out of the June 9, 2008 fire).  As it was, Plaintiffs provided their (first) sworn proof of loss on June 5, 2009.  Defendant has not argued or presented evidence (and the Court will not find as a matter of law) that it would have been able to properly evaluate and render a coverage decision on a $440,000 claim in four days.  There has been no proof of actual prejudice arising from the breach of this condition precedent and Defendant is not entitled to summary judgment on that basis.

Defendant takes its argument one step further, and maintains that the breach of this contractual condition precedent requires dismissal of Plaintiffs' non-contractual claims (CPA, bad faith, IFCA) as well.  Depositors bases its position on a single case – Downie v. State Farm Fire & Cas. Co., 84 Wn.App. 577, review denied, 132 Wn.2d 1003 (1997) – which it asserts stands for the proposition that violation of a contractual condition precedent to filing a lawsuit entitles the insurance company to dismissal of non-contractual claims (in Downie, bad faith and CPA) as well.  A review of that case, however, reveals that the dismissal of the non-contractual claims in Downie was premised on an independent finding of no proof of those causes of action, not the mere failure to satisfy the precedent conditions in the insurance contract.  There is nothing logically or intuitively appealing about Defendant's argument in this regard.

2.   Failure to cooperate

The policy enumerates certain "Duties After Loss" which are incumbent on the insureds, among them: (1) prompt notice to the agent, (2) cooperation in the investigation of the claim, (3) preparation of an inventory of damaged personal property (attaching all bills, receipts and related documents justifying the value assigned to the property), (4) provision of requested records and

**ORDER ON MOTIONS FOR SUMM JUDGMT - 12**

1 documents, and (5) submission to examination under oath.² These duties must be performed by "you,
2 an 'insured' seeking coverage, or a representative of either." Rogers Decl., Exh. A, "Homeowners 3
3 Special Form," pp. 16-17.

4     Defendant maintains that Plaintiffs failed to cooperate in the following regards:

6 • *Failure to provide claim and financial documents as requested*: Defendant claims that,
7     despite repeated requests, Plaintiffs never provided them with any financial information,
8     including their tax returns or W-2 forms. Plaintiffs respond by alleging that they provided
9     over 4000 documents (including 2005-2007 tax returns) in response to Thenell's request, then
10     provided them again to Rogers when he reiterated the request. Plaintiffs' Response, pp. 14-
11     15. To say that Plaintiffs' proof in this regard is "slight" would be an understatement.
12     Plaintiffs' counsel Salazar includes a statement in her declaration that "[o]ur firm's
13     production logs confirm that we sent over 4000 documents to Mr. Thenell in advance of the
14     EUOs that took place March 26, 2009, and that these documents included Plaintiffs' tax
15     returns for 2005-2007." Salazar Decl., ¶ 3. The production log is not attached as evidence.
16     The only documentary evidence Plaintiffs provide is a July 30, 2009 letter from Salazar to
17     Rogers (Id., Exh. M) stating that the material was sent to Thenell and offering to provide it
18     again to Rogers if the material cannot be located. Salazar also asserts in her declaration that
19     the materials were re-sent to Rogers.

21     Defendant objects and moves to strike Salazar's declaration in this regard on "best evidence
22     rule" and "hearsay" grounds. Def. Reply p. 2. Although the Court cannot help but agree that

---

² The sixth – submission of a sworn statement of loss upon request – has already been addressed in the preceding section of this order.

**ORDER ON MOTIONS FOR SUMM JUDGMT - 13**

the objections are well-taken, summary judgment on this crucial aspect of the case will not be granted on evidentiary grounds alone.  Ms. Salazar is an officer of the court and has declared under penalty of perjury that she has inspected the production log and that it reflects that the materials were provided.  On that basis, the Court finds evidence of a disputed issue of material fact concerning the production of the requested financial information which precludes summary judgment on this point.

- *Failure to permit inspection of computers*:  Looking at the facts in the light most favorable to the non-moving party, the Court cannot find their objections to producing the computer files without reviewing them for confidential/privileged material unreasonable on any basis, nor a violation of their duty to cooperate with Defendant's investigation.  The remainder of the computer-inspection saga is a landscape strewn with factual disputes and unsuited to summary judgment determination.

- *Failure to allow Defendant to interview their representatives or to make their representatives available for EUOs*: Defendant alleges that (1) Plaintiffs refused to allow the "contents specialist" for Adjusters International ("AI"), Mr. Vanderhoof, to speak with their investigator Gormley and (2) that Plaintiffs refused to make Vanderhoof or Bronsink's commercial property manager Mr. Bjerke available for EUOs.

Defendant fails to establish their first ground as an undisputed material fact.  Defendant says "Plaintiffs refused to allow Vanderhoof to talk to Gormley;" Plaintiffs say "the AI representatives were there specifically to speak with Gormley and at no time refused to do

**ORDER ON MOTIONS FOR SUMM JUDGMT - 14**

so." It is a classic disputed issue of material fact and not amenable to resolution by summary judgment.

The situation concerning the requests for EUOs of Vanderhoof and Bjerke is not so straight-forward. The contract clearly makes "availability for EUO" one of the "Duties After Loss." That duty "must be performed either by you, an "insured" seeking coverage, **or** a representative of either." Rogers Decl., Exh. A, "Homeowners 3 Special Form," pp. 16 (emphasis supplied). Defendant argues that this language means that "the insurer can require a representative to submit to an EUO." Reply, p. 8. The Court finds that the language of the contract ("you... or a representative") does not unambiguously support that position, and resolves the ambiguity in favor of Plaintiffs. It is entirely possible to read the insurance contract to say that, once Plaintiffs submitted themselves to the EUOs, they do not have to produce their representatives for the same purpose, and Plaintiffs are entitled in this summary judgment motion to the benefit of that doubt. Additionally, Defendant cites no authority on who constitutes a "representative." The Court is far from persuaded that Bjerke, an employee of Bronsink's, could properly be labeled a "representative."

The Court finds there is no undisputed factual basis for this "breach of cooperation" argument, and thus no way to rule as a matter of law that Plaintiffs failed to cooperate in the investigation of their claim.

3. <u>Fraud/misrepresentation in presentation of the claim</u>

The contractual injunction against intentional misrepresentations, fraudulent conduct or false statements forms the basis of one of Defendant's affirmative defenses (Dkt. No. 16, Answer, p. 7)

**ORDER ON MOTIONS FOR SUMM JUDGMT - 15**

and Defendant seeks a finding as a matter of law that Plaintiffs violated the contractual prohibitions against making misrepresentations in the course of presenting their claims.

Defendant has the same problem as Plaintiffs in its presentation of the other side's conduct as actionable misrepresentation – the issue of scienter. The record certainly reflects that Plaintiffs have submitted documents with "false" – i.e., incorrect – information in them: the fact that they had to submit a revised proof of loss when incorrect statements were discovered in the first and that Plaintiffs acknowledge that (as of the date the motions were filed) there were still inaccuracies in the "revised" version establishes that fact. But they have corrected the misstatement in the original statement of loss (which Bronsink declares was mistakenly submitted in the first place) and have acknowledged the other inaccuracies concerning a few other items in the statement (pricing, quantity, etc.). Defendant has presented no evidence that they relied on any of Plaintiffs' inaccurate representations to their detriment. The Court is unable find incontrovertible evidence of misrepresentation or fraud as a matter of law, and is not prepared to rule (as it was not for Plaintiffs) that "false" and "inaccurate" are legally interchangeable terms.

As with Plaintiffs' motion, Defendant provides the Court with no authority on the "scienter" element on this false/fraudulent/ misrepresentative continuum – Defendant simply wants the Court to find every mistake and inaccuracy constitutes proof of fraud as a matter of law. The primary case on which Defendant relies for this purpose– Mutual of Enumclaw v. Cox, 110 Wn.2d 643 (1988) – is distinguishable. The Cox opinion contains a finding by that court that the evidence unequivocally established that the insured had committed fraud. The evidence provided by Defendant does not surmount that threshold. It is disputed and is susceptible of other reasonable interpretations than fraud on Plaintiffs' part.

Ultimately, whether these disputed factual issues rise to the level of fraud or misrepresentation sufficient to void the contract and/or deny Plaintiffs the right to any recovery

**ORDER ON MOTIONS FOR SUMM JUDGMT - 16**

(under the CPA, IFCA or bad faith claims) is a question for a jury. Defendant's proof does not entitle them to summary judgment and its motion will be denied.

Motions to strike

The pleadings are riddled with motions and counter-motions to strike. Except where they are addressed in the preceding portions of this order, the requests to strike material fall into two categories: (1) evidence which is sufficiently established by other, non-objectionable means or (2) evidence which was not central to the Court's analysis or rulings. The Court finds the remainder of these objections moot and will not address them in any further detail.

**Conclusion**

The plethora of disputed factual issues in this lawsuit render it unsuitable for summary judgment in any regard. Unless the parties are able to reach a settlement short of trial, it will be up to a jury to sort through the myriad versions of the facts presented here and make determinations of reasonableness, cooperation and misrepresentation. That is what juries do best, and the Court will leave it to them. The parties' motions for summary judgment are DENIED.

The clerk will distribute copies of this order to all counsel.

Dated: June __8___, 2010

Marsha J. Pechman
U.S. District Judge

**ORDER ON MOTIONS
FOR SUMM JUDGMT - 17**